

# CIVIL CASE MANAGEMENT SHEET
## (see SLR 2.011 for required use)

**Case no.:** 1203-02816

**PARTIES** (list overflow on separate sheets):

**Plaintiffs:**
KATHLEEN R. HAIDER

**Defendants:**

| |
|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY; |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION; and |
| METLIFE HOME LOANS, A DIVISION OF METLIFE |

Related cases in Multnomah County Circuit Court (case **number(s)**):
NONE

Has this case been filed previously, or is it related to a case file previously in this court or in another court?

No [ X ] Yes [ ] In this Circuit Court Case No. _____
Yes [ ] In another Circuit Court Case No. _____ County: _____
Yes [ ] In US District Court Case No. _____ Location: _____

**PLAINTIFF:** [ X ] I am an Attorney Representing Plaintiff [ ] I am self-represented
Name: JEFFREY A. MYERS _____ OSB Number: 094561
Phone Number: 503-726-5930
Address: 5200 SW MEADOWS ROAD, SUITE 150, LAKE OSWEGO, OR 97035
              (Street)                                    (City)              (State)    (Zip)
[ ] **Notice of a change of address pursuant to UTCR 2.010(14).**

**TYPE OF CASE** (select **ONE Primary Subject** selection does not bind or limit legal theories):

**Tort and Employment**
[ ] Motor vehicle (including (UM & UIM)
[ ] Construction Defect
[ ] Product liability
[ ] Wrongful Death
[ ] Negligence
[ ] Professional negligence medical
[ ] Professional negligence (legal, other)
[ ] Defamation
[ ] Fraud
[ ] Intentional injury to property (including nuisance and trespass)

[ ] Intentional personal injury (including assault, battery, false arrest, intentional infliction of emotional distress)
[ ] Employer liability (ELL)
[ ] Employment discrimination/wrongful discharge
[ ] Wage and hour
[ ] Employment contract
[ ] Other (specify): _____

**Contract (other than employment)**
[ ] Money Action (consumer credit)
[ ] Insurance
[ ] Negotiable instrument
[ ] Other (specify): _____

**Real Property**
[ ] Quiet Title
[ ] Condemnation/Eminent Domain
[ X ] Foreclosure
[ ] Specific Performance

**Other**
[ X ] Declaratory Judgment/Injunctive Relief
[ ] Intellectual property
[ ] Derivative Shareholder suit
[ ] Securities

[ ] Elder Abuse
[ ] Interpleader (ORCP 31)
[ ] Other (specify): _____

EXHIBIT ___1___
PAGE ___1___

## IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF MULTNOMAH

KATHLEEN R. HAIDER,

　　　　　　　Plaintiff,

　　　v.

FIRST AMERICAN TITLE INSURANCE
COMPANY; FEDERAL NATIONAL
MORTGAGE ASSOCIATION; and
METLIFE HOME LOANS, A DIVISION
OF METLIFE BANK, N.A.,

　　　　　　　Defendants.

Case No.

**SUMMONS**　　**1203-02816**



TO:　FEDERAL NATIONAL MORTGAGE ASSOCIATION
　　　3900 WISCONSIN AVENUE, N.W.
　　　WASHINGTON D.C. 20016

　　　You are hereby required to appear and defend the complaint filed against you in the above entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff will apply to the court for the relief demanded in the complaint.

**NOTICE TO DEFENDANT:　READ THESE PAPERS CAREFULLY!**

　　You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal document called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.

　　If you have any questions, you should see an attorney immediately. If you need help in finding an attorney, you may contact the Oregon State Bar's Lawyer Referral Service online at www.oregonstatebar.org or by calling (503) 684-3763 in the Portland metropolitan area or toll-free elsewhere in Oregon at (800) 452-7636.

| SIGNATURE OF ATTORNEY/AUTHOR FOR PLAINTIFF | | |
|---|---|---|
| **JEFFREY A. MYERS** | | OSB# 094561 |
| ATTORNEY'S NAME (TYPED OR PRINTED) | | BAR NO. (IF ANY) |
| 5200 SW MEADOWS ROAD, SUITE 150 | | |
| ADDRESS | | |
| Lake Oswego, OR 97035 – 503-726-5930 | | |
| CITY | STATE | ZIP | PHONE |
| Timothy J. Zimmerman | | OSB #873765 |
| TRIAL ATTORNEY IF OTHER THAN ABOVE (TYPED OR PRINTED) | | BAR NO. |

STATE OF OREGON, County of Clackamas)

　　I, the undersigned attorney of record for the plaintiff, certify that the foregoing is an exact and complete copy of the original summons in the above entitled action.

　　　　　　　　　　　　　ATTORNEY OF RECORD FOR PLAINTIFF(S)

　　TO THE OFFICER OF OTHER PERSON SERVING THIS SUMMONS: You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual(s) or other legal entity(ies) to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.

　　　　　　　　　　　　　ATTORNEYS (FOR PLAINTIFF(S)

**EXHIBIT**

**PAGE**

PAGE 1 – SUMMONS　　　　　　　　HAIDER – 3-2-12 – SUMMONS – FANNIEMAE.docx



ORIGINAL

ENTERED

MAR – 2 2012

IN REGISTER BY RRM

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

**02816**

| | |
|---|---|
| KATHLEEN R. HAIDER,<br><br>        Plaintiff,<br><br>v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY; FEDERAL NATIONAL MORTGAGE ASSOCIATION; and METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A.,<br><br>        Defendants. | Case No.<br><br>**1203 – 02816**<br><br>COMPLAINT<br><br>DECLARATORY RELIEF INVALIDATING NON-JUDICIAL FORECLOSURE FOR FAILURE TO COMPLY WITH ORS 86.705 TO ORS 86.795 AND PERMANENT INJUNCTIVE RELIEF |

Plaintiff Kathleen Haider seeks a declaratory judgment invalidating non-judicial foreclosure process for violation of ORS 86.705 to ORS 86.795 and a permanent injunction enjoining Defendant from initiating any subsequent non-judicial foreclosure without recording the assignments of the Deed of Trust that arose by operation of law as described herein and as grounds alleges the following facts:

FACTS COMMON TO ALL COUNTS

1.

Bowles Fernández Law LLC
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035
Phone: 503-726-5930 - Fax: 503-406-2428

EXHIBIT 1
PAGE 3

1    Plaintiff is a resident of Multnomah County, Oregon residing at 9121 SE Harrison

2  Street, Portland, OR 97216 (hereinafter "the Property").

3                                             2.

4    Defendant Metlife Home Loans, (hereinafter "METLIFE") is a loan originator and

5  servicer of residential mortgage loans located at 1555 W Walnut Hill, Lane, Suite 200, Irving,

6

7  TX 75038.

8                                             3.

9    Defendant First American Title Insurance Company (hereinafter "FATCO") is a

10  national association engaged in the business of conducting non-judicial foreclosure sales of

11  residential property.  At all material times FATCO was acting as an agent of METLIFE in its

12  alleged capacity as successor trustee.

13

14                                             4.

15    Defendant Federal National Mortgage Association (hereinafter "FANNIE MAE") is a

16  Government Sponsored Entity actively engaged in the purchase of residential mortgage loans.

17                                             5.

18

19    On August 28, 2003, Plaintiff executed a Promissory Note with Non-Party Guarantee

20  Mortgage Corp. (hereinafter "Lender"), whereby Lender loaned Plaintiff the sum of

21  $120,000.00 for the purchase of the Property.

22                                             6.

23    The Promissory Note was secured by a Deed of Trust that was recorded in Multnomah

24  County under Recording No. 2003-209382 on September 4, 2003 (the "DOT"). *See* Exhibit 1.

25

26

27

28                            Bowles Fernández Law LLC
                          5200 SW Meadows Road, Suite 150
                              Lake Oswego, OR 97035
                       Phone: 503-726-5930 - Fax: 503-406-2428

EXHIBIT ___1___

PAGE ___4___

7.

Plaintiff alleges that Lender immediately sold Plaintiff's loan to Defendant FANNIE MAE after origination. FANNIE MAE presently claims to own Plaintiff's loan. *See* Exhibit 2.

8.

On September 4, 2003, Lender assigned the DOT to Non-Party First Horizon Home Loan Corporation.

9.

This Assignment was recorded in Multnomah County on September 4, 2003, under Recording No. 2003-209383. *See* Exhibit 3.

10.

Plaintiff alleges that Non-Party First Horizon Home Loan Corporation was never an owner of Plaintiff's loan and that the DOT was assigned to a party that had no interest whatsoever in the Note.

11.

On July 23, 2008, Non-Party First Horizon Home Loan Corporation assigned the DOT to Defendant METLIFE.

12.

This second assignment was recorded in Multnomah County on September 26, 2008 under Recording No. 2008-136591. *See* Exhibit 4.

13.

Bowles Fernández Law LLC
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035
Phone: 503-726-5930 - Fax: 503-406-2428

EXHIBIT ___1___

PAGE ___5___

1   On September 10, 2010, Defendant METLIFE, executed an Appointment of Successor

2   Trustee naming defendant FATCO as Successor Trustee.

3                                           14.

4   The Appointment of Successor Trustee was recorded in Multnomah County on

5
    September 15, 2010 under Recording No. 2010-115688. *See* Exhibit 5.
6

7                                           15.

8   On October 27, 2011, FATCO executed a Notice of Default and Election to Sell (the

9   "NOD") against Plaintiff's property, alleging a default under the Promissory Note and initiating

10  a non-judicial foreclosure of Plaintiff's property.

11                                          16.
12
    The NOD was recorded in Multnomah County on October 28, 2011 under Recording
13
14  No. 2011-119978. *See* Exhibit 6.

15                                          17.

16  Defendant FATCO executed a Trustee's Notice of Sale pursuant to ORS 86.740 and

17  caused it to be published pursuant to ORS 86.750. *See* Exhibit 7.
18
19                                          18.

20  Defendants METLIFE and FANNIE MAE's actions in conducting this non-judicial

21  foreclosure wrongfully invoked the power of sale because Defendants have failed to comply

22  with both statutory and contractual preconditions necessary to invoke the power of sale.

23                                          19.
24
    Defendants METLIFE and FANNIE MAE's failures to abide by the non-judicial
25

26
27  Page 4 of 8  COMPLAINT – DECLARATORY RELIEF INVALIDATIN NON-JUDICIAL FORECLOSURE FOR
    FAILURE TO COMPLY WITH ORS 86.705 TO ORS 86.795 AND PERMANENT INJUNCTIVE RELIEF

28                          Bowles Fernández Law LLC
                         5200 SW Meadows Road, Suite 150
                            Lake Oswego, OR 97035
                      Phone: 503-726-5930 - Fax: 503-406-2428

EXHIBIT ___1___

PAGE ___6___

1  foreclosure statutes constitute a breach of the DOT contract because Defendants have sought a

2  remedy under the DOT to which they are not entitled and because Defendants are attempting to

3  foreclose non-judicially without meeting the requirements set forth in ORS 86.705 to ORS

4  86.795.

5

6  20.

7  Defendants METLIFE and FANNIE MAE have wrongfully exercised a remedy that

8  arises out of contract.

9  21.

10  Because the exercise of said remedy is wrongful, Defendants' wrongful exercise of the

11  power of sale constitutes a breach of contract.

12  22.

13

14  The DOT specifically provides for attorney fees in the event that Defendants prevail

15  upon its exercise of the power of sale, Plaintiff is also entitled to its attorney fees pursuant to

16  ORS 20.096 in the event Defendants' exercise of the power of sale is deemed wrongful.

17  23.

18  As Defendants' remedy is based on contract, and as the contract at issue specifically

19

20  provides that attorney fees and costs incurred to enforce the provisions of the contract, Plaintiff

21  is entitled to an award of its fees if it prevails in voiding, invalidating, or setting aside the

22  remedy chosen by Defendants. In the event Defendants' invocation of the power of sale is

23  deemed wrongful, Plaintiff's claim clearly falls within ORS 20.096 because Defendants' claim

24  of the right to foreclose non-judicially arises squarely out of a contract that specifically

25

26

27  Page 5 of 8  COMPLAINT – DECLARATORY RELIEF INVALIDATIN NON-JUDICIAL FORECLOSURE FOR
   FAILURE TO COMPLY WITH ORS 86.705 TO ORS 86.795 AND PERMANENT INJUNCTIVE RELIEF

28  Bowles Fernández Law LLC
   5200 SW Meadows Road, Suite 150
   Lake Oswego, OR 97035
   Phone: 503-726-5930 - Fax: 503-406-2428



EXHIBIT __1__
PAGE __7__

1    provides for an award of attorney fees.

2                     24.

3    Plaintiff has filed the present action to declare the non-judicial foreclosure process

4    predicated on this NOD invalid based on the following:

5

6               **PLAINTIFF'S FIRST CLAIM FOR RELIEF**

7         **DECLARATORY AND PERMANENT INJUNCTIVE RELIEF**

8    **[Invalid Non-Judicial Foreclosure -Failure to Record All Assignments of the Deed of**

9                         **Trust]**

10                  25.

11

12    As set forth in ¶ 7, Lender originated and immediately sold Plaintiff's loan to a third

13    party, specifically, to Defendant FANNIE MAE.

14                  26.

15    Because Plaintiff owes the obligation to Lender under the DOT, the Lender and its

16    successors and assigns are the beneficiary of the DOT and any assignments by the beneficiary

17    or its successors or assigns must be recorded prior to conducting a non-judicial foreclosure to

18    comply with ORS 86.735(1).

19

20                  27.

21    As set forth above, Plaintiff's loan was sold on the secondary mortgage market

22    immediately after origination to Defendant FANNIE MAE, thereby making FANNIE MAE the

23    beneficiary of the DOT.

24                  28.

25

26

27

28                    Bowles Fernández Law LLC
                     5200 SW Meadows Road, Suite 150
                     Lake Oswego, OR 97035
              Phone: 503-726-5930 - Fax: 503-406-2428

EXHIBIT 1
PAGE 8



1    A conveyance of the Promissory Note carries the DOT with it by operation of law.

2                                                29.

3    ORS 86.735(1) requires that "any" assignment of the trust deed must be recorded prior

4
     to initiation of a non-judicial foreclosure.
5
6                                                30.

7    ORS 86.735(1) makes no exception for assignments of a trust deed that occur by

8    operation of law, requiring instead that any assignment by the beneficiary must be recorded.

9                                                31.

10   As Lender is the beneficiary of the DOT by virtue of being the secured party under the

11
     DOT, any conveyance of Plaintiff's Promissory Note created a corresponding assignment of the
12
13   DOT that requires recordation before exercising the power of sale.

14                                               32.

15   The only recorded assignments of the DOT are from Lender to Non-Party First Horizon

16   and from Non-Party First Horizon to Defendant METLIFE.

17                                               33.

18
     There is nothing recorded in the public records evidencing the assignment of the DOT
19
20   that occurred in favor of FANNIE MAE upon the conveyance of the Promissory Note to it.

21                                               34.

22   Plaintiff alleges that Defendants have failed to record all assignments of the DOT and

23   have commenced a defective non-judicial foreclosure in violation of ORS 86.735(1).

24                                               35.

25
26

27   Page 7 of 8  COMPLAINT – DECLARATORY RELIEF INVALIDATIN NON-JUDICIAL FORECLOSURE FOR
     FAILURE TO COMPLY WITH ORS 86.705 TO ORS 86.795 AND PERMANENT INJUNCTIVE RELIEF

28
                                  Bowles Fernández Law LLC
                                  5200 SW Meadows Road, Suite 150
                                  Lake Oswego, OR 97035
                                  Phone: 503-726-5930 - Fax: 503-406-2428

                                                           EXHIBIT ___
                                                           PAGE ___



1  Until Defendants comply with ORS 86.735(1) by recording all assignments of the Deed

2  of Trust that arose by operation of law, any non-judicial foreclosure process initiated by

3  Defendants is invalid.

4

5  36.

6  Plaintiff is entitled to a permanent injunction enjoining Defendants from continuing or

7  initiating any non-judicial foreclosure process without first recording all assignments of the

8  Deed of Trust.

9  WHEREFORE Plaintiff prays for relief as follows:

10  1. For a declaratory judgment setting aside, voiding, and invalidating the non-judicial

11  foreclosure and sale of Plaintiff's home because all assignments of the Deed of Trust

12  were not recorded as required by Oregon law.

13

14  2. For a permanent injunction enjoining Defendants from conducting a subsequent non-

15  judicial foreclosure without recording all assignments of the Deed of Trust, including

16  those that occurred by operation of law;

17  3. For Plaintiff's reasonable costs, disbursements and attorney fees; and

18

19  4. For such other relief as this Court deems just and equitable.

20  DATED this 2nd Day of March, 2012

21

22  Jeffrey A. Myers, OSB No. 094561
   jeff@bowlesfernandez.com

23

24  Trial Attorney:
   Timothy J. Zimmerman, OSB No. 873765

25  tim@bowlesfernandez.com

26

27  Page 8 of 8  COMPLAINT – DECLARATORY RELIEF INVALIDATIN NON-JUDICIAL FORECLOSURE FOR
   FAILURE TO COMPLY WITH ORS 86.705 TO ORS 86.795 AND PERMANENT INJUNCTIVE RELIEF

28  Bowles Fernández Law LLC
   5200 SW Meadows Road, Suite 150
   Lake Oswego, OR 97035
   Phone: 503-726-5930 - Fax: 503-406-2428

EXHIBIT ____1____

PAGE ____10____

After Recording Return To:
FHHLC
ATTN: MAIL ROOM COST CENTER 6708
10741 KING WILLIAM
DALLAS, TX 75220

Recorded in MULTNOMAH COUNTY, OREGON
              C. Swick,  Deputy Clerk
C18     9                       ATLJH
Total :      .61.00

2003-209382    09/04/2003 02:08:35pm

Title Order No.: 03239630M
Escrow No.: 03239630M
LOAN #: 44881084

[Space Below This Line For Acknowledgment] ——

## DEED OF TRUST

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  AUGUST 28, 2003,                together with all Riders to this document.
(B) "Borrower" is  KATHLEEN R HAIDER.

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  GUARANTEE MORTGAGE CORP.

Lender is a CORPORATION                              organized and existing under the laws of
CALIFORNIA.                            Lender's address is  111 SW 5TH AVE, #2625,
PORTLAND, OR 97204.

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is  PACIFIC NORTHWEST TITLE COMPANY.

(E) "Note" means the promissory note signed by Borrower and dated   AUGUST 28, 2003.      The Note
states that Borrower owes Lender  ••••••••••••••••••••••••••ONE HUNDRED TWENTY THOUSAND AND NO/100
••••••••••••••••••••••••••••••••••••••••••••••••••••••••• Dollars (U.S.      $120,000.00  )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
SEPTEMBER 1, 2033.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3038 1·01     Initials:  KRH
© 1999-2002 Online Documents, Inc                          Page 1 of 9                              ORUDEED  0211

Exhibit  1
Page  1  of  9

LOAN #: 44881084

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| Adjustable Rate Rider | Condominium Rider | Second Home Rider |
| Balloon Rider | Planned Unit Development Rider | Other(s) [specify] |
| 1-4 Family Rider | Biweekly Payment Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the   COUNTY                                    [Type of Recording Jurisdiction] of
MULTNOMAH                                  [Name of Recording Jurisdiction]:
LOT 14, BLOCK 5, ASBAHR ADDITION, IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH AND STATE OF OREGON.
APN #: R041001030

which currently has the address of  9121 SE HARRISON STREET, PORTLAND,

[Street] [City]

Oregon    97216         ("Property Address"):
         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

OREGON--Single Family--Fannie Mae Freddie Mac UNIFORM INSTRUMENT    Form 3038 1 01    Initials: _____
© 1999-2002 Online Documents, Inc.                    Page 2 of 9                                ORUDEED

Exhibit 1
Page 2 of 9

9-4-03

EXHIBIT ___1___
PAGE ___12___

LOAN #: 44881084

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those

OREGON–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3038 1 01      Initials:  ᴡᴿᴴ
\ 1999-2002 Online Documents, Inc.                Page 3 of 9                                      OR30DEED

Exhibit ___1___
Page __3__ of __9__

9-4-03

EXHIBIT ___1___
PAGE ___3___

LOAN #: 44881084

proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3038 1/01     Initials: _KBH_
© 1999-2002 Online Documents, Inc.                     Page 4 of 9                                          ORUDEED

9-4-03

Exhibit ___1___
Page _4_ of _9_

EXHIBIT ___1___
PAGE ___14___

LOAN #: 44881084

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is

OREGON–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3038 1 01    Initials: ___
© 1999-2002 Online Documents, Inc.    Page 5 of 9    ORUDEED

Exhibit ___
Page _5_ of _9_

EXHIBIT ___
PAGE _15_

LOAN #: 44881084

completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification or amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address,

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3038 1 01
© 1999-2002 Online Documents, Inc.    Page 6 of 9

Initials: ___
ORUDEED

Exhibit ___
Page 6 of 9

9-4-03

EXHIBIT ___
PAGE 16

LOAN #: 44881084

then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3038 1 01    Initials: KRH

© 1999-2002 Online Documents, Inc.    Page 7 of 9    ORUDEED

Exhibit
Page 7 of 9

9-4-03

LOAN #: 44881084

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

**27. Required Evidence of Property Insurance.**

**WARNING**

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3038 1 01
© 1999-2002 Online Documents, Inc.    Page 8 of 9    Initials: _KPH_
CRU3DEED

Exhibit ___1___
Page _8_ of _9_

9-4-03

EXHIBIT ___1___
PAGE ___18___

LOAN #: 44881084

BY SIGNING BELOW. Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ Kate e H S _____ (Seal)
KATHLEEN R HAIDER

STATE OF OREGON        } ss
County of MULTNOMAH

BE IT REMEMBERED, that on this _29_ day of _Aug_ 2003, before me, the undersigned, a Notary Public in and for the State of Oregon, personally appeared the within named _Kathleen R. Haider_, known to me to be the identical individual described in and who executed the within instrument and acknowledged to me that he/she executed the same freely and voluntarily.

WITNESS my hand and official seal.

_____
Notary Public in and for the State of Oregon
My Commission expires:  10/26/05

OFFICIAL SEAL
DANIELLE EASTON
NOTARY PUBLIC-OREGON
COMMISSION NO. 351107
MY COMMISSION EXPIRES OCTOBER 26, 2005

OREGON–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3038 1/01
© 1999-2002 Online Documents, Inc.            Page 9 of 9                   ORUDEED

9-4-03

Exhibit ____1____
Page __9__ of __9__

EXHIBIT ____1____
PAGE ____19____

Does Fannie Mae Own Your Mortgage? Loan Lookup Tool

Page 1 of 1

 **FannieMae**

## Loan Lookup

The Fannie Mae Loan Lookup enables mortgage borrowers to quickly determine if Fannie Mae owns their loan by providing a street address, unit, city, state, and ZIP code.

Street Address *
9121 SE Harrison St.

Unit

City
PORTLAND

State

Zip Code *
97216

☐ * I confirm that I am the owner of this property, or have the consent of the owner to look up this information.

**prln.** 

* Required Fields

Type the two words:

**Match Found.**

Based on the property information entered, it appears Fannie Mae owns a loan at this address.

A "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification.

If you're interested in a refinance, please contact your mortgage lender or servicer (the organization to whom you make your monthly mortgage payments) to confirm these results and ask about the Home Affordable Refinance Plus program.

You can find more information at MakingHomeAffordable.gov.

View Frequently Asked Questions for this Loan Lookup tool.

Thank you for contacting Fannie Mae.

· © 2012 Fannie Mae

· Site Map |
· Privacy |
· Legal

The Fannie Mae Loan Lookup is provided as a convenience for borrowers. Fannie Mae makes no representation, warranty, or guarantee regarding the accuracy or completeness of the results. A search that results in a "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification. Information that does not match our records exactly may return inaccurate results. You should contact your mortgage lender to verify these results.

For information about the use of our site and our privacy policy, see Legal Information. Click here for FAQs.

## Know Your Options -
## Refinance Options

Learn more about refinance options available even if the value of your home has decreased.

Visit: Refinance Options on KnowYourOptions.com

**888-995-HOPE**
Homeowner's HOPE Hotline
888-995-HOPE (4673)
877-304-9709 TTY

If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673) or via a TTY at 877-304-9709. The Hotline can help with questions about the program and offers free HUD-certified counseling services in English, Spanish, and other languages.

Exhibit ___2___
Page __1__ of __1__

EXHIBIT ___1___
PAGE ___20___    2/16/2012

Recorded in MULTNOMAH COUNTY, OREGON
    C. Swick, Deputy Clerk

**After Recording Return To:**
PHHLC
ATTN: MAIL ROOM COST CENTER 6708
10741 KING WILLIAM
DALLAS, TX 75220

A80    1
Total :      21.00              ATLJH

2003-209383      09/04/2003 02:08:35pm

LOAN #: 44832897

## ASSIGNMENT OF DEED OF TRUST

For Value Received, **GUARANTEE MORTGAGE CORP., A CALIFORNIA CORPORATION**

, holder of a Deed of Trust (herein "Assignor")

whose address is   **111 SW 5TH AVE, #2625, PORTLAND, OR 97204**

does hereby grant, assign, transfer and convey, unto  **FIRST HORIZON HOME LOAN CORPORATION**

, a corporation organized and
(herein "Assignee"),

existing under the laws of  **THE STATE OF KANSAS**
whose address is   **4000 HORIZON WAY, IRVING, TX   75063**

a certain Deed of Trust, dated  **AUGUST 21, 2003,**                , made and executed by  **JEREMY J SHRALL**

, to

**PACIFIC NORTHWEST TITLE COMPANY**

Trustee, upon the following described property situated in **MULTNOMAH COUNTY**                , State of Oregon:
**THE NORTH 33-1/3 FEET OF THE SOUTH 66-2/3 FEET OF LOTS 5 AND 6, BLOCK 17, SUNNYSIDE
ADDITION, IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH AND STATE OF OREGON.
AP #: R810501980**

such Deed of Trust having been given to secure payment of **TWO HUNDRED NINETEEN THOUSAND FIVE HUNDRED****
AND NO/100***************************************************** (        $219,500.00 )
                    (include the Original Principal Amount)
which Deed of Trust is of record in Book, Volume, or Liber No.                           , at page             (or as
No. 2003-209382) of the Mortgage             Records of  **MULTNOMAH**
County, State of Oregon, together with the note(s) and obligations therein described, the money due and to become due thereon with
interest, and all rights accrued or to accrue under such Deed of Trust.
    TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions
of the above-described Deed of Trust.
    IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on

                                                    **GUARANTEE MORTGAGE CORP., A CALIFORNIA
                                                    CORPORATION**

                                                    By _____
                                                                        (Signature)

State of  **OREGON**
County of
This instrument was acknowledged before me on _____ by
_____
as _____ of _____

                                    Heather Elberty

Oregon Assignment of Deed of Trust

                                                    ORGVAS (L0488.1) ORGVAS 901

9-4-03

Exhibit __3__
Page __1__ of __1__

When Recorded Return To:
FIRST HORIZON HOME LOANS
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683
FHHL L#: 0044881084
Investor L#: 1692639972
Pool #:  254904

Multnomah County Official Records
C Swick, Deputy Clerk

2008-136591



$21.00

00390884200801365910010018

09/26/2008 12:16:57 PM

1R-MTG ASGT
$5.00 $11.00 $5.00

Cnt=1 Stn=27 ATVLM

### CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, AS SUCCESSOR IN INTEREST BY MERGER TO FIRST HORIZON HOME LOAN CORPORATION, WHOSE ADDRESS IS 1555 W. WALNUT HILL LN , IRVING, TX 75038, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described deed of trust together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A., WHOSE ADDRESS IS 1555 W. WALNUT HILL LN SUITE 200, IRVING, TX 75038, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).
Said Deed of Trust dated 08/28/2003 , and executed by: KATHLEEN R HAIDER  to GUARANTEE MORTGAGE CORP  and recorded in Book   page   as Instr# 2003-209382  in the office of the Recorder of MULTNOMAH County, Oregon.

dated: 07/23/2008
FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, AS SUCCESSOR IN INTEREST BY MERGER TO FIRST HORIZON HOME LOAN CORPORATION

BY:_____
CRYSTAL MOORE   LIMITED VICE PRESIDENT

STATE OF FLORIDA          COUNTY OF Pinellas
I hereby certify that I know or have satisfactory evidence that CRYSTAL MOORE  is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he is authorized to execute the instrument and acknowledged it as the LIMITED VICE PRESIDENT  of FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, AS SUCCESSOR IN INTEREST BY MERGER TO FIRST HORIZON HOME LOAN CORPORATION  to be the free and voluntary act of such party for the uses and purposes mentioned in this instrument. THIS 23RD DAY OF JULY IN THE YEAR 2008

_____
BRYAN J. BLY
Notary Public
My commission expires: 07/01/2011

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

Prepared by:
J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

FHHML 8782460
ENH1882286

Exhibit ___4___
Page _1_ of _1_

form34PXMON1
EXHIBIT ___1___
PAGE ___22___

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY
RECORDING REQUESTED BY
FIRST AMERICAN TITLE INS. CO.

**Multnomah County Official Records**
**C Swick, Deputy Clerk**                    **2010-115688**

## Appointment of
## Successor Trustee

**$41.00**

0072344920100115688 0020025

RE: Trust Deed From
**KATHLEEN R HAIDER**

09/15/2010 02:39:19 PM

|                                          | Grantor |
|------------------------------------------|---------|

**1R-SUB TR**            Cnt=1 Stn=29 ATMCS
$10.00 $11.00 $15.00 $5.00

To
**FIRST AMERICAN TITLE INSURANCE
COMPANY**

Successor Trustee

After recording return to (Name, Address, Zip):
**Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**      4521016

TS No:  **OR-10-381560-NH**

KNOW ALL MEN BY THESE PRESENTS: **KATHLEEN R HAIDER** is the grantor, **PACIFIC NORTHWEST TITLE COMPANY** is the trustee, and **GUARANTEE MORTGAGE CORP.** is the beneficiary under that certain deed dated 8/28/2003, recorded 9/4/2003, in book number **xxx**, at page **xxx**, and or as fee/ file/ instrument/ microfilm /reception number. **2003-209382** of the records of **MULTNOMAH, OR.**

The undersigned, who is the present beneficiary under the trust deed, desires to appoint a new trustee in the place and stead of the original trustee named above.

NOW, THEREFORE, the undersigned hereby appoints **FIRST AMERICAN TITLE INSURANCE COMPANY** as successor trustee under the trust deed, to have all the power of the original trustee, effective immediately.

In construing this instrument, and whenever the context so requires, the singular includes the plural.

IN WITNESS WHEREOF, the undersigned beneficiary has executed this document. If the undersigned is a corporation, it has caused its name to be signed and its seal, if any, affixed by an officer or other person duly authorized to do so by order of its board of directors.

FIRST AMERICAN

Exhibit  5
Page  1  of  2

EXHIBIT  1
PAGE  23

Appointment of Successor Trustee- OR
TS #: OR-10-381560-NH
Page 2

Dated: 9-10-10                                    MetLife Home Loans, a division of MetLife Bank, N.A.

By: _Anita Miller_

Anita Miller
Limited Vice President

State of: _____Texas_____   )
                            ) ss.
County of: _Dallas_         )

On _09-10-10_ before me, ___Jerry W Lollar___ Notary Public, personally appeared _Anita Miller_ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.                    (Seal)

Signature _____

JERRY WADE LOLLAR
Notary Public, State of Texas
My Commission Expires
November 12, 2013

Exhibit __5__
Page _2_ of _2_

EXHIBIT __1__
PAGE __24__

 

**RECORDING REQUESTED BY**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

**NOTICE OF DEFAULT**
**AND ELECTION TO SELL**

**RE: Trust Deed from KATHLEEN R HAIDER,**
**Grantor**

**Multnomah County Official Records**    **2011-119978**
**R Weldon, Deputy Clerk**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖    **$56.00**
00900125201101199780050050    10/28/2011 02:39:21 PM

**1R-DEF NOTC2**        Cnt=1  Stn=21 ATESB
**$25.00 $11.00 $15.00 $5.00**

**To  FIRST AMERICAN TITLE INSURANCE**
**COMPANY - Successor Trustee**

After recording return to (name, address, zip):
**Quality Loan Service Corp. of Washington**
**2141 5th Avenue**
**San Diego, CA 92101**    4521016

SPACE RESERVED FOR RECORDER'S USE

TS No: **OR-10-381560-NH**

FATCO. NO. 161 7220-70

        Reference is made to that certain trust deed made by **KATHLEEN R HAIDER** as grantor, to **PACIFIC NORTHWEST TITLE COMPANY**, as trustee, in favor of **GUARANTEE MORTGAGE CORP.**, as beneficiary, dated **8/28/2003**, recorded **9/4/2003**, in the Records of **MULTNOMAH** County, Oregon, in book xxx at page xxx, and/or as fee/file/instrument/microfilm/reception No. **2003-209382** , covering the following described real property situated in the above-mentioned county and state, to wit:

APN: **R109249 R041001030**

**LOT 14, BLOCK 5, ASBAHR ADDITION, IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH AND STATE OF OREGON.**

        The undersigned hereby certifies that no assignments of the trust deed by the trustee or by the beneficiary and no appointments of a successor trustee have been made, except as recorded in the records of the county or counties in which the above described real property is situated.  Further, no action has been instituted to recover the debt, or any part thereof, now remaining secured by the trust deed, or, if such action has been instituted, such action has been dismissed except as permitted by ORS 86.735(4).

        There is a default by grantor or other person owing an obligation, performance of which is secured by the trust deed, or by the successor in interest, with respect to provisions therein which authorize sale in the event of such provision.  The default for which foreclosure is made is grantor's failure to pay when due the following sums:

**Delinquent Payments**

| FROM | THRU | NO. PMT | RATE | AMOUNT | TOTAL |
|---|---|---|---|---|---|
| 7/1/2009 | 10/26/2011 | 29 | 5.75000% | $947.52 | $27,478.08 |

| | |
|---|---|
| Total Late Charges: | $980.28 |
| **Beneficiary Advances** | $1,526.65 |
| | **$29,985.01** |
| TOTAL FORECLOSURE COST: | **$2,867.18** |
| **TOTAL REQUIRED TO REINSTATE:** | **$32,852.19** |

Exhibit  6
Page  1 of 5

EXHIBIT  1
PAGE  25

By reason of the default, the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, those sums being the following, to- wit:

**$108,755.60 with interest thereon at the rate of 5.75% beginning 6/1/2009; plus late charges of $35.01 each month beginning 7/1/2009 until paid; plus prior accrued late charges of ; plus advances of $1,526.65; together with title expense, costs, trustee's fees and attorneys fee incurred herein by reason of said default; and any futher sums advanced by the beneficiary for the protection of the above described real property and its interest therein**

Notice hereby is given that the beneficiary and trustee, by reason of default, have elected and do hereby elect to foreclose the trust deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which grantor had, or had the power to convey, at the time of the execution by grantor of the trust deed, together with any interest grantor or grantor's successor in interest acquired after the execution of the trust deed, to satisfy the obligations secured by the trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and the reasonable fees of trustee's attorneys.

The Sale will be held at the hour of **10:00:00 AM**, in accord with the standard of time established by ORS 187.110 on **3/9/2012**, at the following place: **daily at 10:00:00 AM At the east steps of the County Courthouse, 1021 Southwest 4th Ave., Portland, OR** County of **MULTNOMAH**, State of Oregon, which is the hour, date and place last set for sale.

Other than as shown of record, neither the beneficiary nor the trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the trust deed, or of any successor in interest to grantor or of any lessee or other person in possession of or occupying the property, except:

**Name and Last Known Address & Nature of Right, Lien or Interest**

**KATHLEEN HAIDER
9121 SE HARRISON STREET
PORTLAND, OR 97216
Original Borrower**

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation or trust deed, and in addition to paying the sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney fees not exceeding the amounts provided by ORS 86.753.

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to this grantor as well as any other person owing an obligation, the performance of which is secured by the trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

This debt will be presumed to be valid unless you notify this firm in writing within thirty (30) days after receipt of this notice that you dispute the validity of the debt or any portion thereof. If you dispute the validity of this debt or any portion thereof, and if you notify this firm of your dispute in writing within the thirty-day period, we will provide you with verification of the debt and mail such to you at the address to which this notice was sent. Upon your written request within the thirty-day period, we will provide you the name and address of the original creditor according to our records if different than the present creditor.

Exhibit 6
Page 2 of 5

EXHIBIT 1

PAGE 26

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

**NOTICE TO TENANTS:** TENANTS OF THE SUBJECT REAL PROPERTY HAVE CERTAIN PROTECTIONS AFFFORDED TO THEM UNDER ORS 86.755 AND POSSIBLY UNDER FEDERAL LAW. ATTACHED TO THIS NOTICE OF DEFAULT, AND INCORPORATED HEREIN, IS A NOTICE TO TENANTS THAT SETS FORTH SOME OF THE PROTECTIONS THAT ARE AVAILABLE TO A TENANT OF THE SUBJECT REAL PROPERTY AND WHICH SETS FORTH CERTAIN REQUIRMENTS THAT MUST BE COMPLIED WITH BY ANY TENANT IN ORDER TO OBTAIN THE AFFORDED PROTECTION, AS REQUIRED UNDER ORS 86.745.

Dated: 10/26/2011

FIRST AMERICAN TITLE INSURANCE COMPANY, as trustee

Signature By _____

c/o Quality Loan Service Corp. of Washington
CINDY ENGEL, ASST SEC
2141 5th Avenue
San Diego, CA 92101

For Non-Sale Information:
Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101
(866) 645-7711
Fax: 619-645-7716

State of: _____CA_____ )
County of: ____Orange____ )

On __10/27/11__ before me, __Tracy Marie Conrad__ personally appeared **CINDY ENGEL, ASST SEC** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____  (Seal)

Tracy Marie Conrad

TRACY MARIE CONRAD
Commission # 1840865
Notary Public - California
Orange County
My Comm. Expires Mar 19, 2013

Exhibit _6_
Page _3_ of _5_

EXHIBIT __1__
PAGE __27__

## NOTICE TO RESIDENTIAL TENANTS

The property in which you are living is in foreclosure. A foreclosure sale is scheduled for 3/9/2012. The date of this sale may be postponed. Unless the lender that is foreclosing on this property is paid before the sale date, the foreclosure will go through and someone new will own this property. After the sale, the new owner is required to provide you with contact information and notice that the sale took place.

The following information applies to you only if you are a bona fide tenant occupying and renting this property as a residential dwelling under a legitimate rental agreement. The information does not apply to you if you own this property or if you are not a bona fide residential tenant.

If the foreclosure sale goes through, the new owner will have the right to require you to move out. Before the new owner can require you to move, the new owner must provide you with written notice that specifies the date by which you must move out. If you do not leave before the move-out date, the new owner can have the sheriff remove you from the property after a court hearing. You will receive notice of the court hearing.

### PROTECTION FROM EVICTION

IF YOU ARE A BONA FIDE TENANT OCCUPYING AND RENTING THIS PROPERTY AS A RESIDENTIAL DWELLING, YOU HAVE THE RIGHT TO CONTINUE LIVING IN THIS PROPERTY AFTER THE FORECLOSURE SALE FOR:
- **THE REMAINDER OF YOUR FIXED TERM LEASE, IF YOU HAVE A FIXED TERM LEASE; OR**
- **AT LEAST 90 DAYS FROM THE DATE YOU ARE GIVEN A WRITTEN TERMINATION NOTICE.**

If the new owner wants to move in and use this property as a primary residence, the new owner can give you written notice and require you to move out after 90 days, even though you have a fixed term lease with more than 90 days left.

You must be provided with at least 90 days' written notice after the foreclosure sale before you can be required to move.

A bona fide tenant is a residential tenant who is not the borrower (property owner) or a child, spouse or parent of the borrower, and whose rental agreement:
- Is the result of an arm's-length transaction;
- Requires the payment of rent that is not substantially less than fair market rent for the property, unless the rent is reduced or subsidized due to a federal, state or local subsidy; and
- Was entered into prior to the date of the foreclosure sale.

### ABOUT YOUR TENANCY BETWEEN NOW AND THE FORECLOSURE SALE: RENT

YOU SHOULD CONTINUE TO PAY RENT TO YOUR LANDLORD UNTIL THE PROPERTY IS SOLD OR UNTIL A COURT TELLS YOU OTHERWISE. IF YOU

Exhibit __6__
Page __4__ of __5__

**DO NOT PAY RENT, YOU CAN BE EVICTED. BE SURE TO KEEP PROOF OF ANY PAYMENTS YOU MAKE.**

## SECURITY DEPOSIT

You may apply your security deposit and any rent you paid in advance against the current rent you owe your landlord as provided in ORS 90.367. To do this, you must notify your landlord in writing that you want to subtract the amount of your security deposit or prepaid rent from your rent payment. You may do this only for the rent you owe your current landlord. If you do this, you must do so before the foreclosure sale. The business or individual who buys this property at the foreclosure sale is not responsible to you for any deposit or prepaid rent you paid to your landlord.

## ABOUT YOUR TENANCY AFTER THE FORECLOSURE SALE

The new owner that buys this property at the foreclosure sale may be willing to allow you to stay as a tenant instead of requiring you to move out after 90 days or at the end of your fixed term lease. After the sale, you should receive a written notice informing you that the sale took place and giving you the new owner's name and contact information. You should contact the new owner if you would like to stay. If the new owner accepts rent from you, signs a new residential rental agreement with you or does not notify you in writing within 30 days after the date of the foreclosure sale that you must move out, the new owner becomes your new landlord and must maintain the property. Otherwise:

- You do not owe rent;
- The new owner is not your landlord and is not responsible for maintaining the property on your behalf; and
- You must move out by the date the new owner specifies in a notice to you.

The new owner may offer to pay your moving expenses and any other costs or amounts you and the new owner agree on in exchange for your agreement to leave the premises in less than 90 days or before your fixed term lease expires. You should speak with a lawyer to fully understand your rights before making any decisions regarding your tenancy.

IT IS UNLAWFUL FOR ANY PERSON TO TRY TO FORCE YOU TO LEAVE YOUR DWELLING UNIT WITHOUT FIRST GIVING YOU WRITTEN NOTICE AND GOING TO COURT TO EVICT YOU. FOR MORE INFORMATION ABOUT YOUR RIGHTS, YOU SHOULD CONSULT A LAWYER. If you believe you need legal assistance, contact the Oregon State Bar and ask for the lawyer referral service. Contact information for the Oregon State Bar is included with this notice. If you do not have enough money to pay a lawyer and are otherwise eligible, you may be able to receive legal assistance for free. Information about whom to contact for free legal assistance is included with this notice.

Oregon State Bar:  (503) 684-3763; (800) 452-7636
Legal assistance: www.lawhelp.org/or/index.cfm

Exhibit ___6___
Page _5_ of _5_

EXHIBIT __1__
PAGE __29__

## TRUSTEE'S NOTICE OF SALE

T.S. No: OR-10-381560-NH

Reference is made to that certain deed made by, **KATHLEEN R HAIDER** as Grantor to **PACIFIC NORTHWEST TITLE COMPANY**, as trustee, in favor of **GUARANTEE MORTGAGE CORP.**, as Beneficiary, dated **8/28/2003**, recorded **9/4/2003**, in official records of **MULTNOMAH** County, Oregon in book/ reel/ volume number **xxx** at page number **xxx** fee/ file/ instrument/ microfile/ reception number **2003-209382**, , covering the following described real property situated in said County and State, to-wit:

**APN: R109249 R041001030**
**LOT 14, BLOCK 5, ASBAHR ADDITION, IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH AND STATE OF OREGON.**

Commonly known as:
**9121 SE HARRISON STREET**
**PORTLAND, OR 97216**

Both the beneficiary and the trustee have elected to sell the said real property to satisfy the obligations secured by said trust deed and notice has been recorded pursuant to Section 86.735(3) of Oregon Revised Statutes: the default for which the foreclosure is made is the grantors:
**The installments of principal and interest which became due on 5/1/2009, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.**

Monthly Payment $947.52        Monthly Late Charge $35.01

By this reason of said default the beneficiary has declared all obligations secured by said deed of trust immediately due and payable, said sums being the following, to-wit: The sum of **$109,111.37** together with interest thereon at the rate of **5.7500** per annum from **4/1/2009** until paid; plus all accrued late charges thereon; and all trustee's fees, foreclosure costs and any sums advanced by the beneficiary pursuant to the terms of said deed of trust.

Whereof, notice hereby is given that **FIRST AMERICAN TITLE INSURANCE COMPANY**, the undersigned trustee will on **1/26/2011** at the hour of **10:00:00 AM**, Standard of Time, as established by section 187.110, Oregon Revised Statues, at **At the east steps of the County Courthouse, 1021 Southwest 4th Ave., Portland, OR** County of **MULTNOMAH**, State of Oregon, sell at public auction to the highest bidder for cash the interest in the said described real property which the grantor had or had power to convey at the time of the execution by him of the said trust deed, together with any interest which the grantor or his successors in interest acquired after the execution of said trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that any person named in Section 86.753 of Oregon Revised Statutes has the right to have the foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of said principal as would not then be due had no default occurred), together with the costs, trustee's and attorney's fees and curing any other default complained of in the Notice of Default by tendering the performance required under the obligation or trust deed, at any time prior to five days before the date last set for sale.

**For Sale Information Call: 714-573-1965 or Login to: www.priorityposting.com**

1

Exhibit ___7___
Page __1__ of _10_
EXHIBIT ___1___
PAGE ___30___

T.S. No.: OR-10-381560-NH

## TRUSTEE'S NOTICE OF SALE

In construing this notice, the masculine gender includes the feminine and the neuter, the singular includes plural, the word "grantor" includes any successor in interest to the grantor as well as any other persons owing an obligation, the performance of which is secured by said trust deed, the words "trustee" and 'beneficiary" include their respective successors in interest, if any.

Pursuant to Oregon Law, this sale will not be deemed final until the Trustee's deed has been issued by FIRST AMERICAN TITLE INSURANCE COMPANY. If there are any irregularities discovered within 10 days of the date of this sale, that the trustee will rescind the sale, return the buyer's money and take further action as necessary.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

## NOTICE TO RESIDENTIAL TENANTS

The property in which you are living is in foreclosure. A foreclosure sale is scheduled for 1/26/2011. Unless the lender who is foreclosing on this property is paid, the foreclosure will go through and someone new will own this property.

The following information applies to you only if you occupy and rent this property as a residential dwelling under a legitimate rental agreement. The information does not apply to you if you own this property or if you are not a residential tenant.

If the foreclosure goes through, the business or individual who buys this property at the foreclosure sale has the right to require you to move out. The buyer must first give you an eviction notice in writing that specifies the date by which you must move out. The buyer may not give you this notice until after the foreclosure sale happens. If you do not leave before the move-out date, the buyer can have the sheriff remove you from the property after a court hearing. You will receive notice of the court hearing.

### FEDERAL LAW REQUIRES YOU TO BE NOTIFIED

IF YOU ARE OCCUPYING AND RENTING THIS PROPERTY AS A RESIDENTIAL DWELLING UNDER A LEGITIMATE RENTAL AGREEMENT, FEDERAL LAW REQUIRES THE BUYER TO GIVE YOU A NOTICE IN WRITING A CERTAIN NUMBER OF DAYS BEFORE THE BUYER CAN REQUIRE YOU TO MOVE OUT. THE FEDERAL LAW THAT REQUIRES THE BUYER TO GIVE YOU THIS NOTICE IS EFFECTIVE UNTIL DECEMBER 31, 2012. Under federal law, the buyer must give you at least 90 days' notice in writing before requiring you to move out. If you are renting this property under a fixed-term lease (for example, a six-month or one-

2

Exhibit ___7___
Page _2_ of _10_

EXHIBIT ___|___

PAGE ___31___

year lease), you may stay until the end of your lease term. If the buyer wants to move in and use this property as the buyer's primary residence, the buyer can give you written notice and require you to move out after 90 days, even if you have a fixed-term lease with more than 90 days left.

## STATE LAW NOTIFICATION REQUIREMENTS

IF THE FEDERAL LAW DOES NOT APPLY, STATE LAW STILL REQUIRES THE BUYER TO GIVE YOU NOTICE IN WRITING BEFORE REQUIRING YOU TO MOVE OUT IF YOU ARE OCCUPYING AND RENTING THE PROPERTY AS A TENANT IN GOOD FAITH. EVEN IF THE FEDERAL LAW REQUIREMENT IS NO LONGER EFFECTIVE AFTER DECEMBER 31, 2012, THE REQUIREMENT UNDER STATE LAW STILL APPLIES TO YOUR SITUATION. Under state law, if you have a fixed-term lease (for example, a six-month or one-year lease), the buyer must give you at least 60 days' notice in writing before requiring you to move out. If the buyer wants to move in and use this property as the buyer's primary residence, the buyer can give you written notice and require you to move out after 30 days, even if you have a fixed-term lease with more than 30 days left.

If you are renting under a month-to-month or week-to-week rental agreement, the buyer must give you at least 30 days' notice in writing before requiring you to move out.

IMPORTANT: For the buyer to be required to give you a notice under state law, you must prove to the business or individual who is handling the foreclosure sale that you are occupying and renting this property as a residential dwelling under a legitimate rental agreement. The name and address of the business or individual who is handling the foreclosure sale is shown on this notice under the heading "TRUSTEE". You must mail or deliver your proof not later than 12/27/2010 (30 days before the date first set for the foreclosure sale). Your proof must be in writing and should be a copy of your rental agreement or lease. If you do not have a written rental agreement or lease, you can provide other proof, such as receipts for rent paid.

## ABOUT YOUR SECURITY DEPOSIT

Under state law, you may apply your security deposit and any rent you paid in advance against the current rent you owe your landlord. To do this, you must notify your landlord in writing that you want to subtract the amount of your security deposit or prepaid rent from your rent payment. You may do this only for the rent you owe your current landlord. If you do this, you must do so before the foreclosure sale. The business or individual who buys this property at the foreclosure sale is not responsible to you for any deposit or prepaid rent you paid to your landlord.

## ABOUT YOUR TENACY AFTER THE FORECLOSURE SALE

The business or individual who buys this property at the foreclosure sale may be willing to allow you to stay as a tenant instead of requiring you to move out. You should contact the buyer to discuss that possibility if you would like to stay. Under state law, if the buyer accepts rent from you, signs a new residential rental agreement with you or does not notify you in writing within 30 days after the date of the foreclosure sale that you must move out, the buyer becomes your new landlord and must maintain the property. Otherwise, the buyer is not your landlord and is not responsible for maintaining the property on your behalf and you must move out by the date the buyer specifies in a notice to you.

Exhibit _7_
Page _3_ of _10_

EXHIBIT _1_
PAGE _32_

YOU SHOULD CONTINUE TO PAY RENT TO YOUR LANDLORD UNTIL THE PROPERTY IS SOLD TO ANOTHER BUSINESS OR INDIVIDUAL OR UNTIL A COURT OR A LENDER TELLS YOU OTHERWISE. IF YOU DO NOT PAY RENT, YOU CAN BE EVICTED. AS EXPLAINED ABOVE, YOU MAY BE ABLE TO APPLY A DEPOSIT OR RENT YOU PREPAID AGAINST YOUR CURRENT RENT OBLIGATION. BE SURE TO KEEP PROOF OF ANY PAYMENTS YOU MAKE AND OF ANY NOTICE YOU GIVE OR RECEIVE CONCERNING THE APPLICATION OF YOUR DEPOSIT OR PREPAID RENT.

IT IS UNLAWFUL FOR ANY PERSON TO TRY TO FORCE YOU TO LEAVE YOUR HOME WITHOUT FIRST GOING TO COURT TO EVICT YOU. FOR MORE INFORMATION ABOUT YOUR RIGHTS, YOU MAY WISH TO CONSULT A LAWYER. If you believe you need legal assistance, contact the Oregon State Bar and ask for the lawyer referral service. Contact information for the Oregon State Bar is included with this notice. If you do not have enough money to pay a lawyer or are otherwise eligible, you may be able to receive legal assistance for free. Information about whom to contact for free legal assistance is included with this notice.

Oregon State Bar: (503) 684-3763; (800) 452-7636
Legal assistance: www.lawhelp.org/or/index.cfm

Dated:  9/20/2010

FIRST AMERICAN TITLE INSURANCE COMPANY,
as trustee
3 First American Way
Santa Ana, CA 92707

Signature By

Angelica Castillo, Assistant Secretary
Quality Loan Service Corp. of Washington as agent for
FIRST AMERICAN TITLE INSURANCE COMPANY
2141 5th Avenue
San Diego, CA 92101
619-645-7711

For Non-Sale Information:
Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101
619-645-7711
Fax: 619-645-7716

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**
As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

4

Exhibit  7
Page  4 of 10
EXHIBIT  1
PAGE  33

## AFFIDAVIT OF COMPLIANCE WITH OREGON SB 628
## (AS AMENDED BY HB 3610)

**Original Loan Amount:** $120,000.00
**Borrower Name(s):**KATHLEEN HAIDER
**Property Address:** 9121 SE HARRISON STREET
PORTLAND, OR 97216

**TS #:** OR-10-381560-NH

The undersigned is an employee of the beneficiary of the trust deed securing the above-referenced loan or of its authorized agent, at least 18 years of age and competent to testify in a court of law and, having personal knowledge of the matters set forth below, represents and avers, under the penalty of perjury, that the following selected paragraph(s) is/are true and correct (select all that apply):* If you check box three another box must be checked to address the outcome of the requested loan modification.

[ ✓ ] **No Request Loan Modification Request Form Received.** Borrower did not return the form sent to them pursuant to ORS 86.737 by the date specified in the form.

[ ] **Meeting Requested But Borrower Unavailable to Schedule Meeting.** Borrower requested a meeting within 30 days of the date the Trustee signed the notice required by Section 20, chapter 19, Oregon Laws 2008 ("Law") and sent the required Loan Modification Request Form to beneficiary or its agent. The beneficiary or beneficiary's authorized agent attempted to contact the borrower by the methods contemplated by Law within 45 days of receiving the loan modification request. Borrower did not respond within 7 days of attempted contact. Accordingly, no meeting was required and no meeting occurred.

[ ] **Meeting Occurred.** Borrower requested a meeting by telephone or in person within 30 days of the date the trustee signed the notice required by Law and sent the required Loan Modification Request Form to beneficiary or its agent. The beneficiary or beneficiary's authorized agent contacted Borrower by the methods allowed by law to schedule a meeting. A meeting was scheduled and took place between borrower and a representative of the beneficiary or beneficiary's agent -- authorized to modify the loan or able to obtain authority to modify the loan – prior to the beneficiary determining whether or not to grant borrower's request for a loan modification. * If you check this box another box still must be checked to address the outcome of the requested loan modification.

[ ] **Loan Modification Requested. Borrower Deemed Ineligible. Request Denied.** Borrower requested a loan modification within 30 days of the date the trustee signed the notice required by Law and sent the Loan Modification Request Form to beneficiary. The loan modification request was evaluated in good faith within 45 days of receipt. After considering the most current financial information provided by borrower, the beneficiary or beneficiary's agent determined that borrower is ineligible for a loan modification. Within 45 days of the beneficiary's receipt of borrower's Loan Modification Request Form, the beneficiary or beneficiary's authorized agent notified borrower that borrower is ineligible for a loan modification.

[ ] **Loan Modification Requested. After Evaluation, Request Denied.** Borrower requested a loan modification within 30 days of the date the trustee signed the notice required by Law and sent the Loan Modification Request Form to beneficiary or its agent. The loan modification request was evaluated in good faith within 45 days of receipt. Within 45 days of the beneficiary's

Exhibit ___7___
Page __5_ of _10_

EXHIBIT ___1___
PAGE ___34___

receipt of borrower's Loan Modification Request Form, the beneficiary or beneficiary's
authorized agent notified borrower that borrower's request for a loan modification was denied.

[ ] **Loan Modification Requested. Borrower Approved for a Modification but Subsequently
Defaulted.** Borrower requested a loan modification within 30 days of the date the trustee signed
the notice required by Law and sent the Loan Modification Request Form to beneficiary or its
agent. The loan modification request was evaluated in good faith within 45 days of receipt.
Within 45 days of the beneficiary's receipt of borrower's Loan Modification Request Form, the
beneficiary or beneficiary's authorized agent notified borrower that borrower's request for a loan
modification was approved. Borrower subsequently failed to return the executed modification
agreement, required down payment, or failed to timely make the payment(s) under the terms of
the agreement.

[ ] **Loan Modification Requested. Information Provided by Borrower. Request Denied.**
Borrower requested a loan modification within 30 days of the date the trustee signed the notice
required by law and sent the Loan Modification Request Form to beneficiary or its agent. Within
45 days of receipt of the Loan Modification the beneficiary, or its authorized agent, requested
that the borrower(s) submit additional financial information. The requested financial information
was received and within 45 days of its receipt a good faith review of the information was
completed. Within 45 days of the beneficiary's receipt of the requested financial information the
beneficiary or beneficiary's authorized agent notified borrower that borrower's request for a loan
modification was denied.

[ ] **Loan Modification Requested. Insufficient Information Provided by Borrower. Request
Denied.** Borrower requested a loan modification within 30 days of the date the trustee signed the
notice required by law and sent the Loan Modification Request Form to beneficiary or its agent.
Within 45 days of receipt of the Loan Modification the beneficiary, or its authorized agent,
requested that the borrower(s) submit additional financial information. Despite the request for
financial information from the borrower no financial information was received by the beneficiary
or its authorized agent within 30 days of the request. Accordingly, the beneficiary or
beneficiary's authorized agent notified borrower that borrower's request for a loan modification
was denied.

[ ] Other (Specify): _____

_____

**If the Borrower's loan modification request was denied, the Beneficiary or Beneficiary's agent
provided the grantor with the information described in subsection (1)(b) or (c) of Section 3,
chapter 864, Oregon Laws 2009.**

DATED: _November 16, 2010_

By _[signature]_
Typed Name: **Alfreda Johnson**
Title: **Foreclosure Specialist**

State of _Texas_ )
) ss.
County of _Dallas_ )

This instrument was acknowledged before me on 11/16/2010 by
_Alfreda Johnson_ as _Foreclosure Specialist of_
MetLife Home Loans a Division of MetLife Bank NA .

Exhibit __7__
Page __1__ of __10__

EXHIBIT __1__
PAGE __35__

ROSA ERIKA AGUILAR
Notary Public, State of Texas
My Commission Expires
February 06, 2014

Notary signature
My commission expires 2/6/14

Exhibit __7__
Page __7__ of __10__

EXHIBIT __1__
PAGE __36__

# NOTICE:

## YOU ARE IN DANGER OF LOSING YOUR PROPERTY IF YOU DO NOT TAKE ACTION IMMEDIATELY

**This notice is about your mortgage loan on your property at:**

**Street Address: 9121 SE HARRISON STREET**

**City:** PORTLAND State: OR Zip: 97216

Your lender has decided to sell this property because the money due on your mortgage loan has not been paid on time or because you have failed to fulfill some other obligation to your lender. This is sometimes called "foreclosure."

The amount you would have had to pay as of **9/20/2010** to bring your mortgage loan current was **$19,404.16.** The amount you must now pay to bring your loan current may have increased since that date. By law, your lender has to provide you with details about the amount you owe, if you ask. You may call your lender at **800-364-7662** or Quality Loan Service of Washington at **866-645-7711 ext 3704** to find out the exact amount you must pay to bring your mortgage loan current and to get other details about the amount you owe.

You may also get these details by sending a request by certified mail to:
Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

### THIS IS WHEN AND WHERE YOUR PROPERTY WILL BE SOLD IF YOU DO NOT TAKE ACTION:

Date and Time: **1/26/2011 at 10:00:00 AM**

Place: **At the east steps of the County Courthouse, 1021 Southwest 4th Ave., Portland, OR**

**Exhibit** ___7___
**Page** _8_ **of** _10_

EXHIBIT ___1___
PAGE ___3 7___

---

**THIS IS WHAT YOU CAN DO TO STOP THE SALE:**

1. You can pay the amount past due or correct any other default, up to five days before the sale.

2. You can refinance or otherwise pay off the loan in full anytime before the sale.

3. You can request that your lender give you more time or change the terms of your loan.

4. You can sell your home, provided the sale price is enough to pay what you owe.

---

There are government agencies and nonprofit organizations that can give you information about foreclosure and help you decide what to do. For the name and phone number of an organization near you, please call the statewide phone contact number at **800-SAFENET (800-723-3638)**. You may also wish to talk to a lawyer. If you need help finding a lawyer, you may call the Oregon State Bar's Lawyer Referral Service at **503-684-3763** or call toll-free in Oregon at **800-452-7636** or you may visit its Web site at: **www.osbar.org**. Legal assistance may be available if you have a low income and meet federal poverty guidelines. For more information and a directory of legal aid programs, go to **http://www.oregonlawhelp.org**.

Your lender may be willing to modify your loan to reduce the interest rate, reduce the monthly payments or both. You can get information about possible loan modification programs by contacting your lender at **888-638-6964 x 33805**.

If you can't reach your lender, you may contact Quality Loan Service of Washington as agent for trustee at **(877) 886-9757**. If you have already entered into a loan modification with your lender, it is possible that you will not be able to modify your loan again unless your circumstances have changed. Your lender is not obligated to modify your loan.

You may request to meet with your lender to discuss options for modifying your loan. During discussions with your lender, you may have the assistance of a lawyer, a housing counselor or another person of your choosing. To receive a referral to a housing counselor or other assistance available in your community, call this toll-free consumer mortgage foreclosure information number: **800-SAFENET (800-723-3638).** Many lenders participate in new federal loan modification programs. You can obtain more information about these programs at: **http://www.makinghomeaffordable.gov/**.

Exhibit ___7___
Page _9_ of _10_

EXHIBIT ___1___
PAGE ___38___

IF YOU WANT TO APPLY TO MODIFY YOUR LOAN, YOU MUST FILL OUT AND
MAIL IT BACK TO THE ENCLOSED "MODIFICATION REQUEST FORM." YOUR
LENDER MUST RECEIVE THE FORM BY 10/20/2010, WHICH IS 30 DAYS AFTER THE
DATE SHOWN BELOW.

WARNING: You may get offers from people who tell you they can help you keep
your property. You should be careful about those offers. Make sure you understand
any papers you are asked to sign. If you have questions, talk to a lawyer or
one of the organizations mentioned above before signing.

Dated: 9/20/2010

**Quality Loan Service Corp. Of Washington as agent for FIRST**
Trustee name (print):   **AMERICAN TITLE INSURANCE COMPANY**

Trustee signature     **By: Angelica Castillo**
Trustee telephone number: 866-645-7711

Exhibit 7
Page 10 of 10

EXHIBIT 1
PAGE 39

1

2

3

4                  IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                        FOR THE COUNTY OF MULTNOMAH

6   KATHLEEN R. HAIDER,                      )
                                             )
7                          Plaintiff,        )   Case No. 1203-02816
                                             )
8          vs.                               )   NOTICE OF FILING OF REMOVAL TO
                                             )   FEDERAL COURT
9   FIRST AMERICAN TITLE INSURANCE           )
    COMPANY; FEDERAL NATIONAL                )
10  MORTGAGE ASSOCIATION; and METLIFE        )
    HOME LOANS, A DIVISION OF METLIFE        )
11  BANK, N.A.,                              )
                                             )
12                         Defendants.       )
                                             )
13

14  TO:    Clerk of the Multnomah County Circuit Court

15         Defendant Metlife Home Loans, a Division of Metlife Bank, N.A., hereby advises the

16  Clerk of this Court that the above-captioned case has been removed to the United States District

17  Court for the District of Oregon, Portland Division.  A true and correct copy of the underlying

18  Notice of Removal is attached hereto as Exhibit 1 for lodging in the Court's filing of this matter.

19         Furthermore, pursuant to 28 U.S.C. § 1446(d), this matter shall proceed no further unless

20  and until the case is remanded to this Court by the United States District Court.

21         DATED:  April 6, 2012
                                            LANE POWELL PC
22

23

24                                      By   B. T. Kiolba
                                            Pilar C. French, OSB No. 962880
25                                          Brian T. Kiolbasa, OSB No. 112890
                                            docketing-pdx@lanepowell.com
26                                          Attorneys for Defendant Metlife Home Loans and
                                            Federal National Mortgage Association

PAGE 1 -  NOTICE OF FILING OF REMOVAL TO FEDERAL COURT

EXHIBIT  2
PAGE  1

1          **CERTIFICATE OF SERVICE**

2          I hereby certify that on April 6, 2012, I caused to be served a copy of the foregoing

3    NOTICE OF FILING OF REMOVAL TO FEDERAL COURT on the following person(s) in the

4    manner indicated below at the following address(es):

5
     Jeffrey A. Myers, Esq.
6    Timothy Zimmerman, Esq.
     Bowles Fernandez Law LLC
7    5200 SW Meadows Drive, Suite 150
     Lake Oswego, OR  97035-0066
8    E-Mail: Jeff@bowlesfernandez.com
9    E-Mail: tim@bowlesfernandez.com

10   ☐   **by CM/ECF**
     ☑   **by Electronic Mail**
11   ☐   **by Facsimile Transmission**
     ☑   **by First Class Mail**
12   ☐   **by Hand Delivery**
     ☐   **by Overnight Delivery**
13

14                                    _B T. Kiolba_
                                      Brian T. Kiolbasa

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE

EXHIBIT __2__
PAGE __2__

1

2

3

4               IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                       FOR THE COUNTY OF MULTNOMAH

6    KATHLEEN R. HAIDER,                    )
                                           )
7                         Plaintiff,       )  Case No. 1203-02816
                                           )
8        vs.                               )  NOTICE TO ADVERSE PARTY OF
                                           )  REMOVAL TO FEDERAL COURT
9    FIRST AMERICAN TITLE INSURANCE        )
     COMPANY; FEDERAL NATIONAL             )
10   MORTGAGE ASSOCIATION; and METLIFE     )
     HOME LOANS, A DIVISION OF METLIFE     )
11   BANK, N.A.,                           )
                                           )
12                        Defendants.      )
                                           )
13   _____      )

14   TO:    Plaintiff Kathleen R. Haider, through her attorney, Jeffrey A. Myers

15          Defendant Metlife Home Loans, acting through its undersigned counsel, hereby gives

16   notice of the removal of the above-captioned case to the United States District Court for the

17   District of Oregon, Portland Division.  A true and correct copy of the underlying Notice of

18   Removal is attached hereto as Exhibit 1, excluding exhibits.

19          DATED: April 6, 2012
                                           LANE POWELL PC
20

21
                                           By  B. T. Kiolba
22                                             Pilar C. French, OSB No. 962880
                                               Brian T. Kiolbasa, OSB No. 112890
23                                             docketing-pdx@lanepowell.com
                                               Attorneys for Defendant Metlife Home Loans and
24                                             Federal National Mortgage Association

25

26

PAGE 1 -   NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

EXHIBIT  3

PAGE  1

1

## CERTIFICATE OF SERVICE

2

3       I hereby certify that on April 6, 2012, I caused to be served a copy of the foregoing

NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT on the following

4

person(s) in the manner indicated below at the following address(es):

5

Jeffrey A. Myers, Esq.

6       Timothy Zimmerman, Esq.

7       Bowles Fernandez Law LLC
        5200 SW Meadows Drive, Suite 150

8       Lake Oswego, OR  97035-0066
        E-Mail: Jeff@bowlesfernandez.com

9       E-Mail: tim@bowlesfernandez.com

10      ☐    by CM/ECF
        ☑    by Electronic Mail

11      ☐    by Facsimile Transmission
        ☑    by First Class Mail

12      ☐    by Hand Delivery
        ☐    by Overnight Delivery

13

14                                          _B.T. Kiolba_____
                                            Brian T. Kiolbasa

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE

EXHIBIT  3
PAGE  2